# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| EMILIO LONGORIA and § § MARIA LONGORIA, § Plaintiffs, § § vs. § § CITY OF WEBSTER, TEXAS; § OFFICER JACOB T. ARNESEN; § OFFICER NORBERT DING; EL § TIEMPO CANTINA  WEBSTER); § SHERRY KINSEY; and ARMANDO § MARQUEZ, § Defendants. | CIVIL ACTION NO. 4:26-cv-00393 |

## PLAINTIFF'S ORIGINAL COMPLAINT
### (Jury Trial Demanded)

**COMES NOW** Plaintiffs, **EMILIO LONGORIA** and **MARIA LONGORIA**, by and through undersigned Counsel, and files this *Plaintiff's Original Complaint,* a Civil Rights action arising from the reckless escalation of a routine customer-service issue into an unlawful arrest, fabricated prosecution, and misuse of state power. This case began as nothing more than a **routine customer-service issue** – the kind that competent restaurant management resolves every day.

Instead, Defendants chose escalation over de-escalation, ego over judgment, and police force over professionalism. What should have ended with a manager walking away ended with handcuffs, jail, and a fabricated criminal charge.

Page 1 of 11

## I. INTRODUCTION

1. This case arises from the reckless escalation of a routine customer-service issue into a handcuffed arrest, a fabricated criminal charge, and the misuse of police power to enforce private interests.

2. Plaintiffs did not commit a crime. They did not threaten anyone. They did not disturb the peace. They questioned poor service and recorded an interaction that should have ended with a manager walking away.

3. Instead, Defendants chose force over judgment.

4. El Tiempo Cantina and its managers summoned police to resolve a non-criminal dining dispute they were incapable of handling professionally. Webster police officers arrived and, rather than exercising independent judgment, adopted the restaurant's false narrative wholesale. Within minutes, a paying customer was arrested, jailed, disarmed, and prosecuted for a crime that never occurred.

5. This case is not about public intoxication. It is about how **bad management decisions, unchecked discretion, and lazy policing combined to convert poor service into probable cause**.

6. The Constitution does not permit private businesses to win arguments by calling the police, nor does it permit officers to turn inconvenience into criminal process. Plaintiffs bring this action to hold every actor in that chain accountable.

## II. JURISDICTION AND VENUE

7. This action arises under the **First, Fourth, and Fourteenth Amendments** to the

United States Constitution, **42 U.S.C. § 1983**, and **42 U.S.C. § 1981**.

8. This Court has subject-matter jurisdiction pursuant to **28 U.S.C. § 1331** and **28 U.S.C. § 1343(a)(3) – (4)**.

9. Venue is proper in the **Houston Division of the Southern District of Texas** because all events giving rise to these claims occurred in **Webster, Harris County, Texas**.

### III. PARTIES

10. Plaintiff **Emilio Longoria** is an individual resident of Harris County, Texas.

11. Plaintiff **Maria Longoria** is an individual resident of Harris County, Texas.

12. Defendant **City of Webster, Texas** is a municipal corporation organized under the laws of the State of Texas. It may be served through its Mayor or City Manager at Webster City Hall, **101 Pennsylvania Avenue, Webster, Texas 77598**, or wherever it may be found.

13. Defendant **Officer Jacob T. Arnesen** is a police officer employed by the Webster Police Department and acted under color of state law at all relevant times. He may be served through the Webster Police Department at **20230 Galveston Road, Webster, Texas 77598**, or wherever he may be found.

14. Defendant **Officer Norbert Ding** is a police officer employed by the Webster Police Department and acted under color of state law at all relevant times. He may be served through the Webster Police Department at **20230 Galveston Road, Webster, Texas 77598**, or wherever he may be found.

15. Defendant **El Tiempo Cantina** is a restaurant business operating at **20237 IH-45 South, Webster, Texas 77598**. and does business as **El Tiempo Webster, LLC**. This Defendant may be served through its registered agent, c/o **Eric L. Baumgart**, at **602 Sawyer Street, Suite 110, Houston, Texas 77007**, or wherever it may be found.

16. Defendant **Sherry Kinsey** was, at all relevant times, the General Manager of El Tiempo Cantina on duty on January 27, 2024, and exercised managerial authority over the premises and staff. She may be served at El Tiempo Cantina, **20237 IH-45 South, Webster, Texas 77598**, or wherever she may be found.

17. Defendant **Armando Marquez** was, at all relevant times, an Assistant Manager of El Tiempo Cantina on duty on January 27, 2024. He may be served at El Tiempo Cantina, **20237 IH-45 South, Webster, Texas 77598**, or wherever he may be found.

### IV.   FACTS

18. On January 27, 2024, Plaintiffs were dining peacefully at **El Tiempo Cantina** in Webster, Texas.

19. They were not intoxicated. They were not aggressive. They were not disruptive. They were simply enjoying a celebratory dinner and chose El Tiempo for that occasion.

20. What followed was not criminal conduct – it was **poor management**.

21. Defendant **Armando Marquez** approached Plaintiffs and demanded that they move tables to accommodate a **large white family**, despite Plaintiffs having been properly

seated and already dining – more than half-way through their meal.

22. Plaintiffs questioned the request and declined to move immediately, offering instead to relocate to another area of the restaurant of management's choosing after finishing their meal. (It should be noted that Plaintiffs were already more than half-way through consuming their meal.)

23. Rather than resolve the issue professionally, Marquez offered free drinks to purchase compliance.

24. Plaintiffs declined again.

25. Defendant **Sherry Kinsey**, the General Manager, then intervened – not to calm the situation, but to **escalate it**.

26. At its core, the dispute was a **routine customer-service issue**, the type competent restaurant management resolves every day without incident.

27. Instead, Kinsey reframed disagreement as defiance and criticism as aggression.

28. Plaintiffs began **recording the interaction**, a lawful act protected by the First Amendment.

29. Kinsey reacted by accusing Plaintiffs of being "aggressive," threatening to call the police, and then doing exactly that.

30. Kinsey falsely reported that Plaintiffs were disorderly and intoxicated, despite knowing this was untrue.

31. **Officers Arnesen and Ding arrived and immediately adopted El Tiempo management's version of events**, conducting no meaningful independent

investigation.

32. At all relevant times, Defendants El Tiempo Cantina, Sherry Kinsey, and Armando Marquez acted jointly with and in concert with Defendants Arnesen and Ding by knowingly providing false information, demanding police enforcement of a non-criminal dispute, and participating in the decision to remove, arrest, and prosecute Mr. Longoria. Their conduct constituted willful participation in joint action with state actors and was taken under color of state law for purposes of 42 U.S.C. § 1983.

33. Officer Arnesen ordered Mr. Longoria to leave, despite his lawful presence and calm demeanor.

34. Officer Arnesen administered **no field sobriety test**, **no breath test**, and **no blood test**, yet declared intoxication based solely on subjective assertions later contradicted by video evidence.

35. Officer Arnesen's stated basis for probable cause was knowingly false or recklessly fabricated. Mr. Longoria was never warned to leave prior to arrest, never administered any sobriety testing, and never observed engaging in conduct consistent with public intoxication. Video evidence later reviewed by the prosecuting authority contradicted the officer's narrative in material respects.

36. When the Longoria's were forcibly removed from the El Tiempo restaurant, their seats were immediately occupied by a White family – Mr. and Mrs. Longoria are Hispanic.

37. Officer Arnesen arrested Mr. Longoria for **Public Intoxication**, handcuffed him in

public, and transported him to jail.

38. Officer Arnesen seized Mr. Longoria's lawfully carried firearm under the pretext of "safekeeping."

39. Officer Ding turned his attention to **Maria Longoria**, threatening her with arrest, accusing her of intoxication, and forcing her to arrange alternate transportation. Even accusing her of intoxication because she "appeared" to be unstable on her feet.

40. Ms. Longoria tried to explain that she had a disability, had evidence to that extent in her purse, attempted to offer it to the officer, but he explicitly denied and willfully ignored the truth.

41. Mr. Longoria was jailed, charged, and prosecuted – not because he committed a crime, but because Defendants chose enforcement over restraint.

42. When the prosecuting authority later reviewed **video evidence**, the case collapsed.

43. The criminal proceeding terminated in Mr. Longoria's favor, satisfying the favorable-termination requirement under **Thompson v. Clark**, 596 U.S. 36 (2022).

44. **But for Defendants Kinsey's and Marquez's reckless escalation of a routine dining disagreement – an issue that never required police involvement – law enforcement would never have been summoned, no arrest would have occurred, and no criminal case would have been initiated.**

45. El Tiempo did not call the police to restore peace. It called the police to **win an argument it had already lost**.

46. Private businesses are not entitled to convert poor management into probable cause.

## V.     CLAIMS FOR RELIEF

### A. *Fourth Amendment – False Arrest and Unlawful Seizure (§ 1983)*

47. Officer Arnesen arrested Mr. Longoria without probable cause.

48. Defendants Arnesen and Ding are not entitled to qualified immunity. At the time of the events in question, it was clearly established that an officer may not arrest an individual without probable cause, may not retaliate against protected speech, may not detain or threaten a person based on fabricated or exaggerated allegations, and may not enforce private interests through the misuse of police power. Any reasonable officer would have known that arresting a calm, compliant diner without sobriety testing, based solely on a private party's false accusations and in retaliation for recording and verbal objection, violated clearly established constitutional law.

49. Mr. Longoria lost his liberty as a result of the unlawful arrest and detention.

50. Officer Ding unlawfully detained and threatened Maria Longoria.

### B. *Fourth Amendment – Malicious Prosecution (§ 1983)*

51. Defendants initiated and continued criminal proceedings without probable cause. Defendants acted with malice and/or reckless disregard for the truth by initiating charges they knew were unsupported by probable cause.

52. Mr. Longoria was seized pursuant to legal process.

53. The prosecution ended in his favor after exculpatory evidence surfaced.

### C. *First Amendment – Retaliation (§ 1983)*

54. Plaintiffs were arrested and threatened because they recorded and objected.

55. Absent that protected speech, no arrest would have occurred.

56. The decision to arrest and threaten Plaintiffs occurred immediately after and because of Plaintiffs' recording and verbal objection and would not have occurred in the absence of that protected activity.

D. *Fourteenth Amendment – Equal Protection (§ 1983)*

57. Defendants selectively enforced the law against Plaintiffs, who are Hispanic, while similarly situated White patrons – specifically the White family who immediately occupied Plaintiffs' table – were not subjected to removal, police scrutiny, or enforcement.

E. *Municipal Liability — City of Webster (Monell)*

58. This case also exposes a municipal failure that was neither accidental nor isolated. The City of Webster fostered a culture in which officers are permitted – if not expected – to act as enforcement tools for private actors, making arrests based on convenience, unverified complaints, and wounded egos rather than constitutional standards.

59. Officer Arnesen's arrest of Mr. Longoria was not a rogue act; it was the predictable outcome of a city that fails to train its officers on protected speech, probable cause, and the constitutional limits of police authority, and that ratifies unlawful conduct by allowing baseless prosecutions to proceed without correction. When a municipality permits its officers to convert non-criminal disputes into arrests

without consequence, the resulting constitutional violations are not aberrations – they are policy in practice.

60. Webster failed to train officers on protected speech, customer-initiated calls, and arrests premised on private complaints.

61. The City ratified unconstitutional conduct by prosecuting the case and taking no corrective action. These failures were the moving force behind the violations of Plaintiffs' constitutional rights.

F. *Racial Discrimination in Contracting (§ 1981)*

62. El Tiempo, Kinsey, and Marquez interfered with Plaintiffs' existing and ongoing contractual relationship for dining services by forcibly removing them mid-meal and replacing them with White patrons because of race.

G. *Evidence Preservation*

63. Defendants were on notice to preserve bodycam footage, surveillance video, internal communications, and electronic data.

64. Any spoliation supports an adverse inference.

## VI. DAMAGES

65. Plaintiffs suffered loss of liberty, emotional distress, humiliation, reputational harm, and constitutional injury.

66. Further, Plaintiffs have suffered a series of medical events as a result of the physical stress that this incident has caused. These injuries were a foreseeable consequence of Defendants' unlawful conduct.

67. All Defendants acted willfully and maliciously, justifying **punitive damages**.

## VII.    PRAYER FOR RELIEF

Plaintiffs seek compensatory damages, punitive damages, attorneys' fees under **42 U.S.C. § 1988**, declaratory relief, and all other relief to which they are entitled.

## VIII.    JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Respectfully Submitted,
/s/Courtney A. Vincent
**Courtney A. Vincent**
Minnesota Bar No. 0403083
SDTX Bar No. 3746531
info@vincentlawpllc.com
VINCENT LAW, PLLC
1035 Dairy Ashford, Suite 145
Houston, Texas  77079
**Mailing Address:**
P.O. Box 940129
Houston, Texas  77094
Tel: (713) 223-9300
Fax: (832)603-4444
**COUNSEL FOR PLAINTIFFS**