UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EMILIO LONGORIA<br>and MARIA LONGORIA,<br>    Plaintiffs,<br><br>v.<br><br>CITY OF WEBSTER, TEXAS;<br>OFFICER JACOB T. ARNESEN;<br>OFFICER NORBERT DING;<br>WEBSTER ETC, LLC; SHERRY<br>KINSEY; and ARMANDO<br>MARQUEZ,<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:26-cv-00393 |

## DEFENDANTS CITY OF WEBSTER'S, ARNESEN'S, AND DING'S
## MOTION TO DISMISS

Defendants City of Webster, Texas, and Webster police officers Jacob T. Arnesen and Norbert Ding, III, ("Webster Defendants") move, under FED. R. CIV. P. 12(b)(6) to dismiss all claims asserted against movants in Plaintiffs' First Amended Complaint [ECF No. 35].

### COMPLIANCE WITH THE COURT'S PROCEDURES

1.  In accordance with the Court's Procedure 6.B, Webster Defendants' counsel informed Plaintiffs' counsel of Plaintiffs' pleading deficiencies and the Webster Defendants' intent to file a motion to dismiss Plaintiffs' claims in their "Corrected" Complaint [ECF No. 5] under Rule 12. *See* ECF No. 11. In response, Plaintiffs amended their complaint, [ECF No. 35], and this court permitted Defendants to file a motion to dismiss that complaint. See ECF No. 32.

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................... ii

NATURE AND STAGE OF THE PROCEEDING ......................................................1

STATEMENT OF ISSUES ................................................................................1

   I.   Plaintiffs fail to allege facts showing Fourth Amendment claim. ................. 6

     A.   Probable cause supported arrest for intoxication. .....................................7

     B.   Probable cause supported arrest for trespass. ......................................... 9

     C.   Probable cause supported arrest for unlawfully carrying a firearm. ....... 11

     D.     Probable cause supported arrest for disorderly conduct. ..................... 11

     E.   Plaintiff Maria Longoria was not seized. ...............................................12

     F.   Plaintiffs fail to allege facts showing claim of malicious prosecution. ......13

   II.   Plaintiffs fail to allege facts showing an equal protection claim. ............14

   III.   Plaintiffs fail to allege facts showing First Amendment claim. ................15

   IV.   Plaintiffs fail to allege facts showing equal protection claim. ..................15

   V.   Plaintiffs fail to allege facts which overcome qualified immunity. ..............16

   VI.   Plaintiffs fail to allege facts showing claim against the City. ................... 20

     A.   City cannot be liable because no Plaintiff was deprived of a right. ......... 20

     B.   No allegation shows unconstitutional City policy. .................................. 20

       1.   Plaintiffs' single detention does not show an unconstitutional policy. 21

       2.   Plaintiff has not alleged facts showing policy of failing to train officers. 22

     C.   No allegation showing City policymaker is responsible for claimed deprivation of Plaintiffs rights. ..................................................................... 23

     D.   No allegation showing City policymaker ratified unconstitutional conduct. ............................................................................................................ 24

     E.   No allegation showing City policy caused deprivation of Plaintiffs' rights. 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Hays,*
   65 F.4th 736 (5th Cir. 2023) ........................................................................... 21

*Armstrong v. Ashley,*
   60 F.4th 262 (5th Cir. 2023) ........................................................................ 13, 14

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011) ........................................................................................ 20

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................. 5, 6, 15

*Atwater v. City of Lago Vista,*
   532 U.S. 318 (2001) ...........................................................................................6

*Babb v. Dorman,*
   33 F.3d 472 (5th Cir. 1994) ............................................................................ 16

*Backe v. LeBlanc,*
   691 F.3d 645 (5th Cir. 2012) .......................................................................... 16

*Beattie v. Madison County School District,*
   254 F.3d 595 (5th Cir. 2001) ......................................................................... 24

*Bennett v. City of Slidell,*
   728 F.2d 762 (5th Cir.1984) ...........................................................................22

*Board of the County Commissioners of Bryan County Oklahoma v.*
   *Brown,*
   520 U.S. 397 (1997) ....................................................................................... 24

*Britton v. State,*
   578 S.W.2d 685 (Tex. Crim. App. 1979) (op. on reh'g) ....................................9

*Bryan v. City of Madison,*
   213 F.3d 267 (5th Cir. 2000)...................................................................... 14, 16

*City of Canton v. Harris,*
   489 U.S. 378 (1989)........................................................................................23

*Davis v. Harris Cty. Jail,*
No. 4:23-CV-00006, 2023 U.S. Dist. LEXIS 219722 (S.D. Tex. 2023) (Hanks, J) ................................................................4

*District of Columbia v. Wesby,*
583 U.S. 48 (2018) .............................................................*passim*

*Duran v. Furr's Supermarkets, Inc.,*
921 S.W.2d 778 (Tex. App.—El Paso 1996, writ denied)................................ 12

*Edwards v. Woods,*
51 F.3d 577 (5th Cir. 1995) ................................................... 15, 25

*Fraire v. City of Arlington,*
957 F.2d 1268 (5th Cir. 1992) ................................................... 24

*George v. Abbott,*
No. 3:24-cv-12, 2024 U.S. Dist. LEXIS 139041 (S.D. Tex. 2024) (Brown, J.) ................................................................19

*Gibson v. Rich,*
44 F.3d 274 (5th Cir. 1995) ..................................................... 17

*Gonzalez v. Trevino,*
602 U.S. 653 (2024) .............................................................. 15

*Haggerty v. Texas Southern University,*
391 F.3d 653 (5th Cir. 2004).................................................... 19

*Harmon v. City of Arlington,*
16 F.4th 1159 (5th Cir. 2021) ...................................................10

*Harris v. Wal-Mart Stores Tex., LLC,*
2020 WL 4726757 (S.D. Tex. May 6, 2020) (Brown, J.) ..................................9

*Heien v. North Carolina,*
574 U.S. 54 (2014) ...............................................................9

*Henderson v. Harris County,*
51 F.4th 125 (5th Cir. 2022) ................................................... 24

*Jackson v. Hearne,*
959 F.3d 194 (5th Cir. 2020)................................................... 14

*James v. Harris County,*
577 F.3d 612 (5th Cir. 2009) ...................................................25

*Lewis v. Delgado,*
163 F.4th 926 (5th Cir. 2026) ...................................................................... 17

*Livingston v. Texas,*
No. 22-40719, 2023 U.S. App. LEXIS 19983 (5th Cir. 2023)
(unpublished) ...............................................................................................9

*Malley v. Briggs,*
475 U.S. 335 (1986) ...................................................................................... 18

*Mangieri v. Clifton,*
29 F.3d 1012 (5th Cir. 1994) ........................................................................ 17

*Masington v. State,*
No. 03-02-00160-CR, 2003 WL 1086613 (Tex. App.—Austin Mar.
6, 2003, no pet.) (unpublished) ..............................................................10, 11

*Morgan v. Swanson,*
659 F.3d 359 (5th Cir. 2011) ...................................................................19, 20

*Morrow v. Meachum,*
917 F.3d 870 (5th Cir. 2019) ........................................................................ 17

*Nieves v. Bartlett,*
587 U.S. 391 (2019) ...................................................................................... 15

*Niter v. Brown,*
No. 24-10961, 2025 U.S. App. LEXIS 29915 (5th Cir. 2025)
(unpublished) .............................................................................................. 21

*Outb v. Strauss,*
11 F.3d 488 (5th Cir.), *cert. denied*, 511 U.S. 1127 (1994) ............................... 14

*Peña v. City of Rio Grande City,*
879 F.3d 613 (5th Cir. 2018) .................................................................. 22, 23

*Perdomo v. City of League City,*
163 F.4th 921 (5th Cir. 2026) ....................................................................4, 10

*Peterson v. City of Fort Worth,*
588 F.3d 838 (5th Cir. 2009)...................................................................21, 24

*Pfannstiel v. City of Marion,*
918 F.2d 1178 (5th Cir. 1990) ................................................................17, 19

*Pierce* v. *Smith*,
117 F.3d 866 (5th Cir. 1997) ..................................................................17

*Pierson v. Ray,*
386 U.S 547 (1967) ..................................................................................9

*Piotrowski v. City of Houston,*
237 F.3d 567 (5th Cir. 2001) ..................................................................25

*Price v. Roark,*
256 F.3d 364 (5th Cir. 2001) ...................................................................9

*Prim v. Stein,*
6 F.4th 584 (5th Cir. 2021) ..................................................................7, 8

*R2 Investments LDC v. Phillips,*
401 F.3d 638 (5th Cir. 2005) ...................................................................6

*Rios v. City of Del Rio,*
444 F.3d 417 (5th Cir. 2006) ................................................................ 20

*Rolf v. City of San Antonio,*
77 F.3d 823 (5th Cir. 1996) ...................................................................14

*Saldana v. Garza,*
684 F.2d 1159 (5th Cir. 1982)................................................................18

*Schultea v. Wood,*
47 F.3d 1427 (5th Cir. 1995) (En Banc) .................................................16

*Shumpert v. City of Tupelo,*
905 F.3d 310 (5th Cir. 2018)..................................................................18

*Smith v. Heap,*
31 F.4th 905 (5th Cir. 2022) ....................................................................6

*Snyder v. Trepagnier,*
142 F.3d 791 (5th Cir. 1998)................................................................ 20

*Stanton v. Sims,*
571 U.S. 3 (2013) (Per Curiam) ............................................................19

*State v. Martinez,*
569 S.W.3d 621 (Tex. Crim. App. 2019) .................................................7

*Ste-Marie v. State,*
32 S.W.3d 446 (Tex. App.—Houston [14th Dist.] 2000, no pet.) .................... 11

*Surratt v. McClarin,*
851 F.3d 389 (5th Cir. 2017) ........................................................................ 20

*Templeton v. Jarmillo,*
28 F.4th 618 (5th Cir. 2022) ........................................................................ 17

*Terry v. Ohio,*
392 U.S. 1 (1968) .......................................................................................... 13

*United States v. Armstrong,*
517 U.S. 456 (1996) ...................................................................................... 14

*United States v. Blount,*
123 F.3d 831 (5th Cir. 1997) .......................................................................... 8

*United States v. Larremore,*
150 F.4th 463 (5th Cir. 2025), *cert. denied,* No. 25-6535, 2026
WL 1377165 (U.S. May 18, 2026) ............................................................ 12, 13

*United States v. Mendenhall,*
446 U.S. 544 (1980) ...................................................................................... 13

*United States v. Wright,*
57 F.4th 524 (5th Cir. 2023) .......................................................................... 12

*Vann v. City of Southaven,*
884 F. 3d 307 (5th Cir. 2018) (Per Curiam) ................................................ 20

*Vill. of Willowbrook v. Olech,*
528 U.S. 562 (2000) ...................................................................................... 16

*Vulcan Materials Co. v. City of Tehuacana,*
238 F.3d 382 (5th Cir. 2001) .......................................................................... 6

*Wayte v. United States,*
517 U.S. 598 (1985) ...................................................................................... 14

*Whren v. United States,*
517 U.S. 806 (1996) ...................................................................................... 14

*Zarnow v. City of Wichita Falls Tex.,*
614 F.3d 161 (5th Cir. 2010) ..................................................................... 22, 23

**Statutes**

42 U.S.C. §1981 ......................................................................................... 1

42 U.S.C. §1983........................................................................... 1, 18, 22

TEX. PEN. CODE §30.05 ...................................................................10, 11

TEX. PEN. CODE § 46.02 ...................................................................... 11

TEX. PENAL CODE § 42.01 ...................................................................... 12

TEX. PENAL CODE § 49.02 ........................................................................7

TEX. OCC. CODE Chapter 1701 ..............................................................23

**Other Authorities**

First Amendment.................................................................................. 15

Fourth Amendment ....................................................................6, 10, 23

Fourteenth Amendment ....................................................................1, 15

Federal Rule of Evidence 201......................................................... 4, 16

## NATURE AND STAGE OF THE PROCEEDING

2.      Plaintiffs filed their original complaint on January 18, 2026, asserting claims against the City of Webster, Texas, and police officers Jacob T. Arnesen and Norbert Ding, III under 42 U.S.C. §1983. Plaintiffs also assert a claim under 42 U.S.C. §1981 against Defendants El Tiempo Cantina, Sherry Kinsey and Armando Marquez. On January 29, 2026, Plaintiffs filed an amended complaint removing Defendant El Tiempo Cantina and adding Webster ETC, LLC, but did not change any factual allegations or claims against any Defendant. ECF. No. 5. On April 24, 2026, this Court presided over a pre-motion conference where the restaurant Defendants withdrew their motion to dismiss, and the Court permitted Plaintiffs to file another amended complaint. ECF No. 32. The Court authorized Defendants to file motions to dismiss. *Id.*

## STATEMENT OF ISSUES

3.      Whether Plaintiffs alleged facts which show a plausible claim under the First, Fourth or Fourteenth Amendment against Officer Arnesen, Officer Ding or the City of Webster. And if so, whether Plaintiffs' allegations show that either officer violated clearly established law.

## SUMMARY OF THE ARGUMENT

4.      Plaintiff's allegations show probable cause for Plaintiff Emilio Longoria's arrest and prosecution. Plaintiffs fail to allege facts which show that Officer Ding did anything beyond asking Plaintiff Maria Longoria to make alternative travel arrangements. The complaint does not show that either officer violated the

Constitution. Nor do Plaintiffs allege facts which overcome either officer's qualified immunity. Moreover, Plaintiffs fail to allege facts which show the City had an unconstitutional policy that was the moving force that directly caused an officer to commit unconstitutional conduct.

PLAINTIFFS' ALLEGATIONS

5.      On January 27, 2024, Plaintiffs Emilio and Maria Longoria dined at El Tiempo Cantina in Webster. ECF No. 35 at ¶26. Plaintiffs were sober and calm when they arrived at the cantina. *Id* at ¶ 29. While dining, El Tiempo Defendant Armando Marquez approached Plaintiffs and asked them to move to a different table to accommodate seating of a larger party. *Id* at ¶30. Defendant Kinsey, El Tiempo General Manager, contacted law enforcement and made false representations Plaintiffs were intoxicated and disorderly. *Id* at ¶¶ 31-32. Officers Arnesen and Ding arrived at the cantina and asked Kinsey if she wanted to issue a criminal trespass warning and Kinsey instead informed the officers Kinsey wanted the Plaintiffs to leave. *Id* at ¶33-35. Officer Arneseon's incident report, Case No. 24-00224, documented the events that occurred after the officers arrived. *Id.* at ¶36. Officer Arnesen's report, Case No. 24-00224, documents what happened next. ECF No. 35, *at* ¶36. Officer Arnesen approached Emilio Longoria and informed him the manager had asked Emilio Longoria to leave the premises. ECF No. 35 *at* ¶36. Officer Arneson directed Emilio Longoria to leave. *Id.* The incident report claims unidentified person asked Emilio Longoria to leave "multiple times" and "four times," which Plaintiff claims is false in light of the video evidence recording

the encounter. *Id* at ¶36-38. Emilio Longoria's race is categorized as "White," but he is Hispanic. *Id* at ¶ 38. A white family occupied Plaintiffs seats after Plaintiffs left the restaurant. *Id* at ¶ 78. Officer Arneson arrested Emilio Longoria, handcuffed him, and removed a handgun that Emilio Longoria had on his person. *Id*. at ¶39. Prosecutors later reviewed the video of the events at the restaurant and dismissed the criminal case against Emilio Longoria. *Id*. at ¶¶44-46.

6. Ofc. Arneson did not conduct a field sobriety test, breath or blood test, and Ofc. Arneson's training record does not show field sobriety testing training, ARIDE, or breathalyzer certification during his tenure at Webster police department. *Id*. at ¶¶37, 64-67. Officer Ding stated to Plaintiff Maria Longoria that she appeared unstable on her feet and Ofc. Ding accused Maria Longoria of being intoxicated. Id at ¶41. Maria Longoria explained that she has an unspecified physical disability that affects her gait and balance, and Ofc. Ding told Maria Longoria to arrange alternate transportation. ECF No. 35, at ¶42-43.

7. A *subsequent* incident occurred, where Webster police officers Westall and Everatte were dispatched to a Pluckers restaurant, unspecified charges were filed against unnamed restaurant patrons and later dismissed. *Id*. at ¶¶47-59.

***Recording of the interactions central to Plaintiffs claims contradict assertions in Plaintiffs complaint.***

8. When considering a motion to dismiss, "[t]he court's review is limited to the complaint; any documents attached to the complaint; any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint;

and matters subject to judicial notice under Federal Rule of Evidence 201."*Davis v. Harris Cty. Jail*, No. 4:23-CV-00006, 2023 U.S. Dist. LEXIS 219722, at \*5 (S.D. Tex. 2023) (Hanks, J). (Citing *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022); *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022)). "Courts may also reject a plaintiff's allegations if video evidence attached to the pleadings 'blatantly contradict[s] those allegations.'" *Perdomo v. City of League City*, 163 F.4th 921, 923-24 (5th Cir. 2026).

9. Throughout their complaint, Plaintiffs reference "video evidence" that Plaintiffs assert "contradicts" Officer Arnesens' basis for probable cause as listed in his incident report which Plaintiffs make central to Plaintiffs claims. ECF No. 35, at ¶¶3, 6, 26, 38,44-45, 61, 63, 68, 72-73, 80. The police interaction that resulted in Emilio Longoria's arrest lasted approximately 6 minutes. Ex. 1. Ofc. Arnesen arrived and met with Kinsey, who informed Ofc. Arnesen as follows. *Id* at 00.32-01:20. El Tiempo staff seated Plaintiffs at a table that had a reservation scheduled for 7:00 pm. *Id* at 00.32-01:20. The party arrived 20 minutes late and El Tiempo staff attempted to accommodate the party by asking Plaintiffs to move to an adjacent table, offering Plaintiffs discounted drink/meal items for the inconvenience. *Id.* Kinsey called the police after Plaintiffs refused to move and accused Kinsey of racism. *Id.*

10. Upon their arrival, Ofc. Arnesen asked Kinsey if the restaurant wanted Plaintiffs to leave El Tiempo, and Kinsey said yes in light of Plaintiffs' loud and aggressive behavior. *Id* at 01:20-01:55. Ofc. Arnesen approached the table where

Emilio Longoria was seated with a margarita glass visible. *Id* at Ex. 1. After Ofc. Arnesen introduced himself to the Plaintiffs, Ofc. Arnesen informed the Plaintiffs that the restaurant had asked Plaintiffs to leave the restaurant. *Id* at 02:30-02:48.

11.     But Plaintiffs did not leave after being told to do so. *Id*. Emilio Longoria claimed he would leave but first wanted to explain his version of events. *Id* at 02:48-3:02. The recording depicts Emilio Longoria's speech was slow, slurred, and that he interrupted off Ofc. Arnesen by speaking over Ofc. Arnesen and gesturing with his hand for Ofc. Arnesen to stop talking. Ex. 1 at 02:48-3:23. Ofc. Arnesen explained a second time that the restaurant asked Plaintiffs to leave. *Id*. Plaintiffs did not leave. *Id*. Emilio Longoria continued to speak loudly, even as Maria Longoria attempted to calm him down by placing her hands on him, and Ofc. Arnesen again asked Plaintiffs to leave. *Id*. Plaintiffs still did not leave. *Id*. Ofc. Arnesen approached Plaintiff Emilio Longoria and informed him he was being arrested. Ex. 1 at 3:24-4:15. Emilio Longoria continued to speak in a loud voice accusing the restaurant and its patrons of racism as Ofc. Arnesen escorted Emilio Longoria out of El Tiempo. *Id*.

PLEADING STANDARD

12.     In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court directed reviewing courts to perform "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Under the procedure, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 679. Merely listing generalized legal standards, without providing substantive factual matter to support each element of a claim does not state a claim. *See Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001). Courts need not "strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (*quoting Southland Sec. Corp. v. Inspire Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004). "[P]leaded facts must allow a reasonable inference that the plaintiff should prevail. Facts that only conceivably give rise to relief don't suffice." *Smith v. Heap*, 31 F.4th 905, 910 (5th Cir. 2022).

## I.      Plaintiffs fail to allege facts showing Fourth Amendment claim.

13.     "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "To determine whether an officer had probable cause for an arrest, 'we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause.'" *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "Because probable cause 'deals with probabilities and depends on the totality of the

circumstances,' it is 'a fluid concept' that is 'not readily, or even usefully, reduced to a neat set of legal rules.'" *Id* (internal citations omitted).

### A. Probable cause supported arrest for intoxication.

14. A person commits public intoxication "if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another." TEX. PENAL CODE § 49.02(a). Courts have considered the "odor of alcohol on [a person's] breath [and] on his person...slurred speech, a swayed stance, [whether] his eyes were red and glassy" and whether a person's "behavior was aggressive; [whether] he did not comply with instructions; and [whether] he was uncooperative." *State v. Martinez*, 569 S.W.3d 621, 629 (Tex. Crim. App. 2019); "[T]he question at hand—whether officers could *reasonably infer* that [Emilio Longoria was] intoxicated based on the totality of the circumstances" is the relevant inquiry for this element. *Prim v. Stein*, 6 F.4th 584, 593 (5th Cir. 2021).

15. The recording and report, which Plaintiffs make central to claims[1], shows Officer Arnesen observed Emilio Longoria drinking a margarita, smelled alcohol on Emilio Longoria's breath, observed Emilio Longoria to have "blood shot watery eyes," and heard Emilio Longoria's slurred speech. Exhibit 2. Video recordings, which Plaintiffs rely as "contradicting" the Officer's incident report as a basis for this claim, corroborate the reported events. Exhibit 1 at 01:55-3:24.

---

[1] ECF No. 35, at ¶¶3, 6, 26, 38,44-45, 61, 63, 68, 72-73, 80.

16. Plaintiffs assert Ofc. Arnesen improperly relied on Kinsey's "false representations that Plaintiffs were intoxicated and disorderly" as a basis for probable cause. ECF No. 35 at ¶ 32. If *arguendo* Kinsey lied to Ofc. Arnesen, "absent specific reasons for police to doubt his or her truthfulness [facts which Plaintiffs do not allege], an ordinary citizen, who provides information to police at a crime scene or during an ongoing investigation, may be presumed credible without subsequent corroboration." *United States v. Blount*, 123 F.3d 831, 835 (5th Cir. 1997). Plaintiffs' allegations show that Ofc. Arnesen spoke with Emilio Longoria and Ofc. Arnesen made observations consistent with Kinsey's report of intoxication. Ex. 1-2. Officer Arnesen explained his observations of Emilio Longoria's intoxication to Maria Longoria. Ex. 1 at 9:00-10:00.

17. "But section 49.02 requires more than mere intoxication. The officers also needed reason to think that [Emilio Longoria] was a danger to himself, though "[t]he danger need not be immediate." *Prim*, 6 F.4th at 593 (citing *Gallagher v. State*, 778 S.W.2d 153, 154 (Tex. App.—Houston [1st Dist.] 1989, no pet.). Fatal to his claim, Emilio Longoria only makes conclusory assertions that Ofc. Arnesen did not assess whether Emilio "Longoria was a danger to himself or others" [ECF No. 35, at ¶ 64] and that Ofc. Arnesen "did not tell Mr. Longoria he was intoxicated or a danger to himself or others" [ECF No. 35, at ¶ 66], which are belied by the recording. Ex. 1 at 3:24-4:15; Ex. 2. For the element of "danger to himself," the Texas Court of Criminal appeals held, "when an officer is confronted with a person intoxicated in a public place, his determination as to probable danger that may

befall the individual is not reviewed under the same standard used in a judicial determination of guilt." *Britton v. State*, 578 S.W.2d 685, 689 (Tex. Crim. App. 1979) (op. on reh'g). Texas Courts look to "potential danger rather than present danger to the accused or others." *Id*. Potential danger was present here, Ex. 1 at 3:24-4:15; Ex. 2. "[T]he subsequent dismissal of [intoxication] charge [has] no bearing on [the probable cause or reasonable suspicion] analysis." *See Harris v. Wal-Mart Stores Tex., LLC*, 2020 WL 4726757 at *7 (S.D. Tex. May 6, 2020) (Brown, J.) (citing *Howell v. Tanner*, 650 F.2d 610, 615 (5th Cir. 1981). *See also Pierson v. Ray*, 386 U.S 547, 555 (1967) ("[A] peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved.").

**B.      Probable cause supported arrest for trespass.**

18.      "Under Supreme Court precedent, the existence of probable cause for any offense is sufficient to defeat a claim of false arrest, even if the offense giving rise to probable cause is different from 'the offense identified by the arresting officer at the time of arrest.'" *Livingston v. Texas*, No. 22-40719, 2023 U.S. App. LEXIS 19983, at *7 (5th Cir. 2023) (unpublished) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)); *See also Heien v. North Carolina*, 574 U.S. 54, 65 (2014); *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001).

19. Officer Arnesen's report corroborated by the recording[2] shows probable cause that both Plaintiffs committed criminal trespass under TEX. PEN. CODE §30.05(a)(2); *Harmon v. City of Arlington,* 16 F.4th 1159, 1163 (5th Cir. 2021); *Perdomo*, 163 F.4th at 923-24. A person commits the offense of criminal trespass when a person "enters or **remains** on or in property . . . of another without effective consent" and that person "received notice to depart but failed to do so." TEX. PEN. CODE §30.05. For purposes of the trespass statute, "notice" means "(A) oral or written communication by the owner or someone with the apparent authority to act for the owner." TEX. PEN. CODE § 30.05(b)(2)(A).

20. Officer Arnesen received information from Kinsey that, after Plaintiffs refused to move tables, Defendant Kinsey wanted Plaintiffs to leave the restaurant thereby revoking consent for Plaintiffs to remain on restaurant premises. Ex. 1 at 02:48-4:15. Officer Arnesen provided notice to Plaintiffs to depart the restaurant three times, but Plaintiffs failed to comply with the request to depart the restaurant, which established probable cause to arrest under TEX. PEN. CODE. §30.05(a)(2), foreclosing a Fourth Amendment claim.

21. In *Masington v. State*, No. 03-02-00160-CR, 2003 WL 1086613, at *1 (Tex. App.—Austin Mar. 6, 2003, no pet.) (unpublished), like Plaintiffs, James Masington was a bar patron who refused to leave the bar despite multiple requests from the bartender and security guard prompting the security guard to call police.

---

[2] *Id* at FN. 1.

When police arrived, Masington again refused the police officer's order to leave the bar and was arrested and later convicted of criminal trespass under TEX. PEN. CODE § 30.05, affirmed by the Austin Court of Appeals. *Id*. In *Masington*, as here, Ofc. Arnesen communicated notice to the patron to depart, but Plaintiffs did not depart, supporting probable cause to arrest either Plaintiff for criminal trespass under TEX. PEN. CODE §30.05(a)(2), foreclosing this claim for either plaintiff.

**C. Probable cause supported arrest for unlawfully carrying a firearm.**

22. A person commits the offense of unlawful carrying of a weapon under Tex. Pen. Code. § 46.02 if the person "carries a handgun while the person is intoxicated; and (2) is not...(a) on private property with the consent of the owner of the property; or (B) inside of or directly en route to a motor vehicle." TEX. PEN. CODE § 46.02 (a-6). Plaintiffs allege facts showing that Emilio Longoria carried a firearm on his person which Ofc. Arneson recovered before transporting Emilio Longoria to jail. ECF No. 35, at ¶39; Ex. 1 at 7:00-8:40. Because Officer Arnesen observed Emilio Longoria armed with a firearm while intoxicated, committing disorderly conduct, and trespassing, probable cause existed for arrest.

**D. Probable cause supported arrest for disorderly conduct.**

23. "Under the Texas Penal Code, a person commits disorderly conduct if he intentionally or knowingly 'uses abusive, indecent, profane, or vulgar language in a public place, and the language by its very utterance tends to incite an immediate breach of the peace.'" *Ste-Marie v. State*, 32 S.W.3d 446, 449 (Tex. App.—Houston

[14th Dist.] 2000, no pet.) (quoting TEX. PENAL CODE § 42.01). Section 42.01 proscribes Emilio Longoria's conduct in using racial slurs against Kinsey [Ex. 1, at 2:06-2:15], raising his voice while pointing at other patrons seated across the restaurant—loud enough to cause Maria Longoria to try to calm Emilio Longoria down by placing her hands on him—and shouting "yall happy, you wanted my table" at other patrons and restaurant staff [Ex. 1, at 3:04-3:40], accusing Ofc. Arnesen—a Hispanic—of being a racist when Emilio Longoria shouts "White Man that's all it is...you the White Man" at Ofc. Arnesen and continued shouts at other restaurant patrons with "all cause they wanted the White man to have the table" as Emilio Longoria exited the restaurant. Emilio Longoria's words are the type that "a person of common intelligence would understand to be words likely to cause an average addressee to fight" required under TEX. PEN. CODE §42.01. *Duran v. Furr's Supermarkets, Inc.,* 921 S.W.2d 778, 785 (Tex. App.—El Paso 1996, writ denied).

### E. Plaintiff Maria Longoria was not seized.

24. A "seizure occurs when an officer '*objectively* manifests an intent to restrain' the liberty of an individual through...a show of authority." *United States v. Wright*, 57 F.4th 524, 530 (5th Cir. 2023) (quoting *Torres v. Madrid*, 592 U.S. 306, 317 (2021)). "In the absence of physical force [as Plaintiff alleges no such facts to suggest any officer used physical force against Maria Longoria], a seizure occurs when; (1) an officer exerts a sufficient show of authority and (2) the defendant submits to it. *United States v. Larremore*, 150 F.4th 463, 470 (5th Cir. 2025), cert. denied, No. 25-6535, 2026 WL 1377165 (U.S. May 18, 2026). "An officer makes a

sufficient show of authority when 'all of the circumstances surrounding the incident [suggest that] a reasonable person would have believed that he was not free to leave.'" *Id* (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

25. Plaintiffs fail to allege facts showing that a reasonable person in her position: i.e. being asked—almost begged—to *leave* a premise, would believe they were not free to leave. Ex. 1. Maria Longoria's failure to comply with Officer Arnesen's requests to leave the restaurant is the opposite of a seizure and even if so, Plaintiff fails to allege facts which show the length of the non-seizure was unreasonable or not supported by probable cause as stated *infra* Sec. I(B), much less the reasonable suspicion standard applicable for this consensual encounter. *See Terry v. Ohio*, 392 U.S. 1, 88 (1968). "In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Mendenhall*, 446 U.S. at 555.

### F. Plaintiffs fail to allege facts showing claim of malicious prosecution.

26. The Fifth Circuit has outlined the following elements necessary to prove a malicious prosecution claim:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages…[P]arties asserting a Fourth Amendment malicious prosecution claim under § 1983 must prove the above elements, in addition to the threshold element of an unlawful Fourth Amendment seizure.

*Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023).

27. Emilio Longoria's[3] malicious prosecution claim fails for the same reasons his arrest without probable cause claim fails; he fails to allege facts which plausibly show the absence of probable cause. *See Armstrong,* 918 F.4th at 279 n.15.

## II. Plaintiffs fail to allege facts showing an equal protection claim.

28. Plaintiffs have not alleged facts showing denial of equal protection. *Compare Whren v. United States*, 517 U.S. 806, 813 (1996); *Wayte v. United States*, 517 U.S. 598, 608 (1985). To state a claim of selective enforcement of criminal laws, Plaintiffs must allege facts showing Officer Arnesen enforced a law against a Plaintiff, that the enforcement action had a discriminatory effect, and that Officer Arnesen was motivated by a discriminatory purpose. *See United States v. Armstrong*, 517 U.S. 456, 465 (1996); *Jackson v. Hearne*, 959 F.3d 194, 201-03 (5th Cir. 2020). An equal protection claim requires allegations plausibly showing "the challenged government action classifies or distinguishes between two or more relevant groups." *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996); *Outb v. Strauss,* 11 F.3d 488, 492 (5th Cir.), *cert. denied*, 511 U.S. 1127 (1994).

29. Plaintiffs fail to allege facts which even suggest, much less plausibly show, "that similarly situated individuals were treated differently." *See Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000). There is no allegation an officer unlawfully classified, or treated differently, a Plaintiff based on constitutionally

---

[3] Maria Longoria was not prosecuted, or even arrested.

forbidden attributes. Plaintiffs' personal beliefs alone do not support a plausible claim. *Compare Edwards v. Woods*, 51 F.3d 577, 580 (5th Cir. 1995).

## III. Plaintiffs fail to allege facts showing First Amendment claim.

30. "The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest" which Plaintiff failed to do here, foreclosing this claim. *See Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). This claim fails also because, "[t]he plaintiff must [allege facts which] show that the retaliation was a substantial or motivating factor behind the [arrest]" which Plaintiff fails to allege here. *Id* at 404. Plaintiffs' "[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S.at 679. If Plaintiff had meets the prior burden, "the defendant can prevail only by showing that the [arrest] would have been initiated without respect to retaliation" which is evident as any reasonable officer had probable cause to arrest Emilio Longoria under these circumstances for offenses *supra* Sec. I (A-D).

31. Also, Plaintiffs failed to allege facts showing "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been" to fall within the narrow exception to the probable cause requirement permitted by *Nieves. Nieves*, 587 U.S. 391, 407; *see also Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024).

## IV. Plaintiffs fail to allege facts showing equal protection claim.

32. To state a Fourteenth Amendment equal protection claim "the plaintiff[s] [must] allege[] [facts which show] that [they] ha[ve] been intentionally treated

differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "As a prerequisite to such a claim, the plaintiff must prove that similarly situated individuals were treated differently" which Plaintiff[s] fail[] to do with the conclusory assertion Officer Arnesen improperly categorized Emilio Longoria's race as "White" instead of "Hispanic"[4] which provides nothing for the Court to analyze for this claim, much less facts which show any other similarly situated restaurant patron was treated differently than Plaintiffs after refusing to leave the premises. *See Bryan*, 213 F.3d at 276.

**V.      Plaintiffs fail to allege facts which overcome qualified immunity.**

33.     To state a plausible claim against an officer who has asserted qualified immunity, a plaintiff must "plead more than conclusions" and allege facts that overcome qualified immunity. *See Schultea v. Wood*, 47 F.3d 1427, 1430-34 (5th Cir. 1995) (En Banc). When an officer raises immunity, "the complaint must state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); *Backe v. LeBlanc*,

---

[4] Although irrelevant to this analysis, Plaintiffs conclusory determination that "Hispanic" is a race, as opposed to ethnicity, is simply wrong. This court may take judicial notice under FED. R. EVID. 201, of the October 30, 1997, Federal Register Notice Revisions to the Standards for the Classification of Federal Data on Race and ethnicity classifying Race and Ethnicity as two unique identifiers. https://obamawhitehouse.archives.gov/omb/fedreg_1997standards/ (last visited June 4, 2026).

691 F.3d 645, 649 (5th Cir. 2012). "To overcome the officers' qualified immunity defense, [Plaintiffs] must allege facts showing that the officers (1) violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

34.     The burden of establishing these factors rests solely on the plaintiff. *Lewis v. Delgado*, 163 F.4th 926, 930 (5th Cir. 2026) (citing *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc)). "A court may assess the two qualified-immunity prongs in either order, and it need not address both prongs if one is dispositive." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

35.     "The first question is whether the officer violated a constitutional right," which neither officer did as explained *supra. Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). "The second question—whether the officer violated clearly established law—is a **doozy**." *Id.* The second step of the analysis "focuses not only on the state of the law at the time of the complained of conduct, but also on the particulars of the challenged conduct and/or factual setting in which it took place." *Pierce* v. *Smith*, 117 F.3d 866, 882 n.5 (5th Cir. 1997). Officers who "reasonably but mistakenly conclude probable cause is present" are entitled to immunity. *Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir. 1994) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (PER CURIAM); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995). "If reasonable public officials could differ on the lawfulness of [an officer's] actions, [he] is entitled to qualified immunity." *Pfannstiel v. City of Marion*, 918 F.2d 1178,

1183 (5th Cir. 1990) (emphasis added). Therefore, to refute immunity, the Court would be required to conclude that an officers' conduct was plainly incompetent, because where "officers of reasonable competence could disagree on this issue, immunity should be recognized." *See Malley v. Briggs,* 475 U.S. 335, 341 (1986).

36. "Police officers can be expected to have a modicum of knowledge regarding the fundamental rights of citizens." *Saldana v. Garza*, 684 F.2d 1159, 1164-65 (5th Cir. 1982). "However, in holding our law enforcement personnel to an objective standard of behavior, [] judgment must be tempered with reason." *Id.* "Certainly [a court] cannot expect our police officers to [possess] a legal scholar's expertise in constitutional law." *Id.* "[I]t is clear that a police officer may be immune from liability under § 1983 even if it is later determined that probable cause for an arrest did not exist." *Saldana*, 684 F.2d at 1164.

37. "In determining what constitutes clearly established law, [the Fifth Circuit] court first looks to Supreme Court precedent and then to [Fifth Circuit precedent]." *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018). "If there is no directly controlling authority, this court may rely on decisions from other circuits to the extent that they constitute "a robust 'consensus of cases of persuasive authority.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 742) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Wesby*, 583 U.S. at 63.

> It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule [Plaintiff] seeks to

apply.

*Id*. (emphasis added).

38.     An objective officer could reasonably believe Ofc. Arnesen's and Ofc. Ding's respective conduct was supported by the facts under the legal authorities cited *supra*. Probable cause and immunity provide two different defenses to Plaintiffs' claims. *See Pfannstiel*, 918 F.2d at 1183. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). "[A] conclusory statement is not enough." *George v. Abbott*, No. 3:24-cv-12, 2024 U.S. Dist. LEXIS 139041, at *9 (S.D. Tex. 2024) (Brown, J.).

39.     Ofc. Arnesen and Ofc. Ding "[are] entitled to qualified immunity if a reasonable officer in [their] position *could have believed* that, in light of the totality of the facts and circumstances of which [they] w[ere] aware, there was a fair probability that [Plaintiff] had committed or was committing an offense." *Haggerty v. Texas Southern University*, 391 F.3d 653, 656 (2004) (emphasis added), because "'[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (Per Curiam) (quoting *al-Kidd*, 563 U.S. at 743 (quoting *Malley*, 475 U.S. at 341). "For a legal principle to be clearly established, '[Plaintiffs] must be able to point to controlling authority-or a robust consensus of persuasive authority-that defines the contours of the right in question with a high degree of particularity,'

*Morgan*, 659 F.3d at 371-72, and that places the statutory or constitutional question 'beyond debate,' *al-Kidd* 563 U.S. at 741." "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 583 U.S. at 63. "The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct *in the particular circumstances before him.*" *Id*. at 63. (emphasis added). "This requires a *high 'degree of specificity.'*" *Id*. (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)) (emphasis added). If binding precedent, based on similar circumstances, has not declared conduct unconstitutional, an officer cannot have violated clearly established law. Compare *Vann v. City of Southaven*, 884 F. 3d 307, 310 (5th Cir. 2018) (PER CURIAM); and *Surratt v. McClarin*, 851 F.3d 389, 392-93 (5th Cir. 2017). Plaintiff fails to allege facts which overcome immunity.

## VI.  Plaintiffs fail to allege facts showing claim against the City.

### A.  City cannot be liable because no Plaintiff was deprived of a right.

40.  Plaintiffs fail to state a claim against the City because the allegations do not plausibly show a violation of federal law. *See Rios v. City of Del Rio*, 444 F.3d 417, 426 (5th Cir. 2006).

### B.  No allegation shows an unconstitutional City policy.

41.  Had Plaintiffs alleged facts showing that either officer violated the Constitution, Plaintiffs allegations still could not support a claim against the City because there is no allegation the City violated the Constitution. *See Snyder v.*

*Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998). "The first requirement [of an unconstitutional policy] can be shown by 'a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by…an official to whom the lawmakers have designated policy-making authority' or through a 'persistent, widespread practice.' *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023) (quoting *Webster v. City of Hou.*, 735 F.2d 838, 841 (5th Cir. 1984)).

42.     The assertions Plaintiffs make against the City stem from the factually unsupported assertion the City has a "persistent pattern and practice of deploying police to resolve private business disputes without independent investigation." ECF No. 35 at ¶81. But "a conclusory allegation of the existence of a policy, coupled with the facts of a plaintiff's own case, is insufficient to adequately plead the 'policy' element of a *Monell* claim." *Niter v. Brown*, No. 24-10961, 2025 U.S. App. LEXIS 29915, at \*3 (5th Cir. 2025) (unpublished). At best, Plaintiffs mention a single *subsequent* police interaction at a restaurant where two Webster police officers were dispatched to a restaurant, but zero facts describing facts which show police misconduct, much less an unconstitutional City policy. [ECF No. 35, at ¶61]. "A pattern requires similarity and specificity" and Plaintiffs' intentional omission of facts from the subsequent police interaction deprive the court of factual allegations which show similarity and specificity between the police interactions necessary for this claim. *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009).

### 1.     Plaintiffs' single detention does not show an unconstitutional policy.

43. Plaintiffs have not alleged facts which show a pattern of constitutional violations based on Plaintiffs' asserted deprivation of their rights. "Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability." *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir.1984)

### 2. Plaintiff has not alleged facts showing a policy of failing to train officers.

44. A "failure-to-train theory requires a plaintiff to prove '1) the [city] failed to train [] the officers involved; 2) there is a causal connection between the alleged failure to [] train and the alleged violation of the plaintiff's rights; and 3) the failure to train [] constituted deliberate indifference to the plaintiff's constitutional rights." *Peña v. City of Rio Grande City,* 879 F.3d 613, 623 (5th Cir. 2018) (internal citations omitted). "In order for 'liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective.'" *Zarnow v. City of Wichita Falls Tex.,* 614 F.3d 161, 170 (5th Cir. 2010). Plaintiff makes no such factual allegation and instead cites to Officer Arnesen's TCOLE training transcript which Plaintiffs claim "contains no record of any standardized field sobriety testing, ARIDE, or breathalyzer certification during Officer Arnesen's entire tenure at the Webster Police Department" which says nothing about the adequacy of the City's training program. ECF No. 35, at 37.

45. Moreover, conceding the officers received *some* training, Plaintiffs state that the City merely failed to "adequately train Officers Arnesen and Ding in the objective criteria required to establish probable cause for a public intoxication

arrest." ECF No. 35, at ¶58. But, "[s]uch a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989).

46. And the Court may properly take judicial notice of statutes in Chapter 1701 of the Texas Occupations Code which demonstrate that the State of Texas has delegated the Texas Commission on Law Enforcement (TCOLE) as the agency in Texas responsible for identifying and establishing statewide comprehensive peace officer training and licensing standards of all peace officers in the State of Texas. Chapter 1701 of the Texas Occupations Code mandates TCOLE training curriculum specifically includes training regarding Fourth Amendment issues. No federal court has held that TCOLE training standards fail to meet minimum constitutional requirements, and several courts have held otherwise. Compare, *Zarnow,* 614 F.3d at 171; *Benavides*, 955 F.2d at 973. Plaintiff's complaint contains no facts which show the City's officers received "no training whatsoever," as needed to state a claim based on an alleged constitutionally deficient police training policy. *See Peña*, 879 F3d at 624.

### C. No allegation showing City policymaker is responsible for the claimed deprivation of Plaintiffs rights.

47. Plaintiffs also fail to allege facts showing the City's policymaker was deliberately indifferent to a Plaintiff's rights. When "a plaintiff seeking to establish [governmental] liability on the theory that a facially lawful [governmental] action has led an employee to violate a plaintiff's rights must demonstrate the municipal

action was taken with 'deliberate indifference' as to its known or obvious consequences." *Board of the County Commissioners of Bryan County Oklahoma v. Brown*, 520 U.S. 397, 407 (1997). "To show deliberate indifference, a plaintiff normally must allege 'a pattern of similar constitutional violations by untrained employees.'" *Henderson v. Harris County*, 51 F.4th 125, 131 (5th Cir. 2022) (internal citations omitted). "A pattern requires similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson*, 588 F.3d at 851 (cleaned up). Plaintiff has failed to allege facts which show requisite deliberate indifference citing only one subsequent police interaction devoid of factual allegations to show the requisite "similarity and specificity" for this claim. ECF No. 35, at ¶61.

## D. No allegation showing City policymaker ratified unconstitutional conduct.

48. Before ratification of unconstitutional conduct may be chargeable to a governmental entity, a policymaker must approve of the subordinate's decision to engage in unlawful conduct and the basis for the decision. *Beattie v. Madison County School District*, 254 F.3d 595, 603 (5th Cir. 2001). Plaintiffs allege no such facts, much less facts which show "an extreme factual situation" required for a claim of ratification. *See Peterson*, 588 F.3d at 848. Even illegal officer behavior cannot be assumed to have resulted from an official policy simply because a policymaker defends subordinates later found to have broken the law. *See Coon*, 780 F.2d at 1161; *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992).

### E. No allegation showing a City policy directly caused a deprivation of Plaintiffs' rights.

49. Plaintiffs also fail to allege facts showing a policy was the moving force that directly caused a violation of Plaintiffs' federally protected rights. *See James v. Harris County*, 577 F.3d 612, 618-619 (5th Cir. 2009); *Piotrowski v. City of Houston*, 237 F.3d 567, 578-81 (5th Cir. 2001). For each purported custom, Plaintiffs cite one subsequent police interaction devoid of fact which "lack[s] 'similarity and specificity,' and therefore they do not 'point to the specific violation in question.'" *Edwards*, 70 F.4th at 312. Plaintiffs fail to make any factual allegations to support a causal connection between an unspecified police interaction and the single instance of temporary detention in Plaintiff's pleading to "satisfy the causality standard that is *Monell*'s third element. [Plaintiffs'] failure-to-train claim therefore falls short. *Id* at *17.; ECF No. 35, ¶61.

### CONCLUSION

For these reasons, the City, Officer Arnesen, and Officer Ding, III ask this court to dismiss Plaintiffs' claims.

Respectfully submitted,

*/s/ Norman Ray Giles*
William S. Helfand
Attorney-in-Charge
SBOT: 09388250
Norman Ray Giles
SBOT: 24014084
Randy E. Lopez
Texas Bar No. 24091829

OF COUNSEL:

LEWIS BRISBOIS BISGAARD & SMITH, LLP

24 Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767
(713) 759-6830 (Fax)
bill.helfand@lewisbrisbois.com
norman.giles@lewisbrisbois.com
randy.lopez@lewisbrisbois.com
Attorneys for Defendants
City of Webster, Texas
Officer Jacob T. Arnesen
Officer Norbert Ding, III,

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to all parties and counsel of record, in accordance with the District's ECF service rules on June 7, 2026.

Courtney Ann Vincent
Vincent Law, PLLC
P.O. Box 940129
Houston, TX 77094
Email: info@vincentlawpllc.com

*Attorneys for Plaintiffs*

Willie Ben Dawe, III
Kirsten Kraus
Michelle Oliveros

Co-defendants' counsel

*/s/ Norman Ray Giles*
Norman Ray Giles